No. 81-348

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

THE FIRST NATIONAL BANK IN EUREKA,
a National banking corporation,

Plaintiff and Respondent,

-vs-

JOHN C. BECKSTROM and CAROL BECKSTROM,
husband and wife,

Defendants and Appellants.

Appeal from: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, The Honorable
Robert Holter, Judge presiding.

Counsel of Record:

For Appellants:

Oleson Law Firm, Kalispell, Montana

For Respondent:

David W. Harman, Libby, Montana

Submitted on Briefs: November 12, 1981

Decided: September 23, 1982

Filed: SEP 23 1982

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The Beckstroms appeal from the Lincoln County District Court's award of costs and attorney fees to the First National Bank in the bank's action to recover a deficiency on a promissory note.

The bank sued the Beckstroms to recover a deficiency owed on a promissory note. The Beckstroms made, and the bank accepted, an offer of judgment against the Beckstroms in the amount of $27,569.20. The offer of judgment also admitted the Beckstroms' liability for "costs of collection, including reasonable attorney fees" but reserved any admission as to the exact amount of costs and attorney fees. Agreement could not be reached between the parties as to the allowable costs and attorney fees, and on May 26, 1981, the District Court issued findings of fact, conclusions of law and judgment awarding the bank $5,000 in attorney fees, and collection costs which included a $200 attachment bond premium paid by the bank. From this judgment the Beckstroms appeal. We affirm.

The Beckstroms first contend that the trial court erred in awarding $5,000 to the bank as reasonable attorney fees. Second, the Beckstroms contest the trial court's taxing the cost of an attachment bond.

The Beckstroms defaulted on a promissory note dated December 3, 1976. The bank and John Beckstrom negotiated a new note and executed a security agreement on May 25, 1978. This note provided that the debtor would be liable for collection costs, including reasonable attorney fees, upon default. (Mrs. Beckstrom did not sign this note or security agreement.) Mr. Beckstrom defaulted on this second note, and the bank repossessed and sold the security to recover

-2-

the $53,799.20 balance owing on the note. The sale left a deficiency of $28,779.20 with interest running as of August 15, 1980. The bank retained the services of David Harman, a Libby attorney, to collect the deficiency. Suit was filed against the Beckstroms on September 26, 1980. Harman and the bank entered into a contingent fee contract which would allow Harman to keep 33 1/3 percent of the amount collected, if collection was made before trial.

The Beckstroms' answer contained three defenses which necessitated some degree of research and investigation by Harman. The bank then filed a series of motions of judgment on the pleadings, partial summary judgment, and motion in limine.

The bank, through attorney Harman, discovered that the Beckstroms owned unmortgaged land which could provide a corpus from which the deficiency could be satisfied. Upon learning of a possible attempt by the Beckstroms to transfer some property to third persons in order to hinder creditors, the attorney for the bank decided to attach the unmortgaged real property. Section 27-18-204, MCA, requires an attaching plaintiff to provide at least two court approved sureties before it allows attachment. The bank agreed to act as its own surety, and also purchased another surety bond for $200 to satisfy section 27-18-204, MCA. The attachment was contested by the Beckstroms, which required additional work on the part of Harman to defend the writ of attachment.

After obtaining a new attorney, the Beckstroms made their offer of judgment which was accepted by the bank, reserving only the issue of costs and attorney fees. The trial court, after an evidentiary hearing, allowed $5,000 in attorney fees to Harman, and also allowed the $200 attachment bond premium to be assessed as costs against the Beckstroms.

## COSTS OF ATTACHMENT BOND

The Beckstroms contend that because attachment was merely one possible legal option available to the bank, and not an absolute necessity, the cost of obtaining the attachment bond is not chargeable to them. We disagree.

Under the terms of the promissory note, as well as the offer of judgment, the Beckstroms are liable for the "costs of collection." This phrase includes only those costs which were reasonably and necessarily incurred by the bank. The bank pursued the attachment only after learning of certain transfers of real property by the Beckstroms. The bank's attorney then felt that attachment was necessary to safeguard the interest of his client. This was not done as a mere convenience, rather, it was necessary to secure collection. There is no evidence of overreaching or harassment by the bank. In purchasing an attachment bond, the bank was merely complying with the express terms of section 27-18-204, MCA. We affirm the trial court's determination that the cost of the attachment bond was chargeable to the Beckstroms.

## AWARD OF ATTORNEY FEES

The Beckstroms contend that many of the fifty hours claimed by the bank's attorney were unnecessary, and were incurred only because of the bank's "sloppy" banking practices. We find no merit in this contention. The Beckstroms chose to raise certain defenses when sued by the bank. This required the attorney for the bank to spend many hours investigating and researching the validity of the defenses. Only when the case was ready for trial did the Beckstroms abandon the defenses by offering judgment against themselves. There is no basis therefore for the Beckstroms' assertion that many of the hours claimed by the bank's attorney were unnecessary.

The Beckstroms also contend that the trial court abused its discretion in awarding $5,000 as reasonable attorney fees because there was no substantial evidence to indicate that such an amount was reasonable. We disagree.

We have repeatedly stated what circumstances are to be considered in awarding reasonable attorney fees:

> "'The circumstances to be considered in determining the compensation to be recovered are the amount and character of the services rendered, the labor, time, and trouble involved, the character and importance of the litigation in which the services were rendered, the amount of money or the value of property to be affected, the professional skill and experience called for, the character and standing in the profession of the attorneys. * * * The result secured by the services of the attorneys may be considered as an important element in determining their value.'" Crncevich v. Georgetown Recreation Corp. (1975), 168 Mont. 113, 119-120, 541 P.2d 56, 59.

The findings of fact and conclusions of the District Court based upon trial without a jury contain the following findings of fact with regard to attorney fees:

> "6. Plaintiff has hired David W. Harman, of Libby, Montana, to represent them in this cause. The note in question provides that the Defendants will pay reasonable attorney's fees. In this regard, the Court finds:
>
> "a. That the Plaintiff and Mr. Harman made a contingent fee agreement which is not binding on the Court but is indication of the agreement between the Parties.
>
> "b. That to the time of hearing hereof, the Plaintiff's counsel had expended at least fifty (50) hours of time and it is likely that continued effort will be needed herein.
>
> "c. That the Defendants action have raised a number of rather unique questions of law into this proceeding, namely the status of a homestead exemption, the motion to dissolve attachment, the transfer of assets to third persons and the question of whether collection costs include the surety bond. An additional question was posed by the denial of liability of the Defendant, Carol Beckstrom, because of her failure to sign renewal notes.

"d. That the results obtained were those which the Plaintiff expected; that the Defendant only submitted its offer of Judgment when the Plaintiff's attorney had advanced this case to trial.

"e. That the Plaintiff's attorney had been admitted to the bar nine years, has represented this particular Plaintiff in other litigation and is competent to handle litigation generally.

"f. That the $5,000.00 requested fee is commensurate with those usually charged in matters of this nature in this community." (Underscoring added.)

From the foregoing findings of fact, the District Court then concluded:

"The note sued upon is due and owing. That suit was required to recover the same, and that Plaintiff is entitled to the principal amount sued upon, interest, costs as set forth in the memorandum and attorney's fees in the sum of $5,000.00."

With regard to the findings of fact, the standard of review of this Court of the factual determinations by the District Court without a jury is set out in Rule 52(a), Montana Rules of Civil Procedure, as follows:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Subparagraph (a) of the findings refers to the contingent fee agreement. Such agreement is an exhibit and shows the agreement by the bank to pay to the plaintiff upon a contingent fee basis as follows:

"I agree to pay my attorneys upon a contingent basis on all sums of money which may be recovered by suit or settlement as follows: 25% of all amounts recovered if settlement is made without instituting suit; 33 1/3% of all amounts recovered if it becomes necessary to institute suit but the case is settled before pre-trial conference; 40% of all amounts recovered after the case is beyond the pre-trial conference stage, whether by settlement or by the recovery of a verdict or the collection of a judgment entered against the adverse party; a sum equal to 50% of all amounts recovered if any type of appellant proceedings are taken by either party."

-6-

In subparagraph (b) the District Court found that plaintiff's counsel had expended "at least" fifty hours of time. Plaintiff's counsel submitted as an exhibit his affidavit regarding the matter of attorney fees. In that affidavit, counsel described the various factors which he thought to be relevant, and included an estimate of approximately fifty hours. He also testified orally, stating that he did not keep time records in this matter and that the estimate of fifty hours was an approximation based upon a review of the file and his notes. The record does sustain the finding that "at least" fifty hours were expended. However, plaintiff's counsel also pointed out that while he had a billable hour factor, generally he performed work on a different basis. He stated:

> "That your Affiant does have an hourly billable rate of $50.00 per hour but generally performs work on a 'per job' basis, or in accordance with a written retainer agreement."

The District Court concluded that the contingent fee agreement "which is not binding on the Court" was nonetheless an indication of the agreement between the parties. Under the contingent fee agreement, the attorneys for the bank appear to be entitled to either 40 percent or 50 percent of the $27,569.20 which was recovered. Under those circumstances it would be unfair to hold counsel to an approximation of fifty hours of work at $50.00 an hour.

Subparagraph (c) refers to the unique questions of law. There is uncontradicted testimony by two attorneys to substantiate those fact conclusions.

Subparagraphs (d) and (e) are both also uncontradicted.

Subparagraph (f) is a key finding. Based upon the uncontradicted testimony of plaintiff's counsel and another attorney who qualified as an expert witness familiar with fees in the area, the District Court concluded as a fact

that the $5,000 fee is "commensurate with those usually charged. . .in this community."

The record amply substantiates each finding of fact of the District Court. We are unable to find a basis to conclude that the findings of facts were clearly erroneous and therefore reversible under Rule 52(a).

In addition, this Court has concluded that we will only consider whether there is substantial credible evidence to support both the findings and the conclusions of a District Court. In Cameron v. Cameron (1978), 179 Mont. 219, 228, 587 P.2d 939, 945, we stated:

> "We will not substitute our judgment for that of the trier of fact, but rather will only consider whether substantial credible evidence supports the findings and conclusions. Those findings will not be overturned by this Court unless there is a clear preponderance of evidence against them."

We hold that the record contains substantial credible evidence to support both the findings and the conclusions of the District Court and that the approach of the District Court in considering the factors set forth in Crncevich and reaching a conclusion that a $5,000 fee award is reasonable is the correct approach.

Affirmed.

_____
Justice

We Concur:

_____
_____
_____

_____
Justices

-8-

Mr. Justice Daniel J. Shea dissenting:

I join in the opinion on the attachment bond issue but I dissent from the decision approving the attorney fee award.

Here we have a situation where plaintiff's counsel was virtually certain to obtain a judgment against the Beckstroms, (or at least against Mr. Beckstrom), in the amount of the promissory note. The real question was whether the bank would have available to it assets to satisfy any judgment obtained.

The question is whether the attorney fee, under these circumstances, is excessive. It is. The attorney testified that he spent about fifty hours on the case, and many of the hours were spent on ancilliary matters directed at finding property that could satisfy any potential judgment. The attorney had represented the bank on other occasions, and so they were not strangers to each other. The attorney fee arrangement was that the attorney would receive on a contingency basis, 25 percent of any amount recovered before suit, 33 1/3 percent of any amount recovered after suit but before trial, 40 percent of any amount recovered after trial, and 50 percent for an amount recovered after an appeal. This contingency should not have been considered for any purpose in determining the reasonableness of a fee, for the Beckstroms were not a party to the contract and should therefore not be bound directly or indirectly by its terms or by its being considered as a factor in setting the fee. Unfortunately, the trial court and this Court both considered the contingency fee as a factor in setting the fee.

The trial court found that the contingency fee contract was not binding on the court, but was simply an indication of the agreement between the parties -- that is, the agreement between the Bank and its attorney. The fact is, however, that absent this agreement, the only evidence present to justify an award would be the $50 per hour normal billable rate testified to by the attorney -- at this rate, the attorney's fee would be $2,500 rather than $5,000 -- twice the normal hourly rate. There is no

evidence in the record demonstrating that the normal hourly rates for attorney fees in the community is $100 per hour -- yet that is the only basis on which the award could be upheld under the majority rationale.

While the trial court and this Court appear to want to avoid using the contingency fee arrangement as a basis for the amount of the attorney fee award, it is clear that both have at least let the contingency fee contract be used as evidence justifying an award beyond the normal $50 per hour testified by plaintiff's attorney as his normal hourly rate. Although I do not understand the majority rationale, this part of its opinion is revealing:

> The District Court concluded that contingent fee agreement which is not binding on the Court was nonetheless an indication of the agreement between the parties. Under the contingent fee agreement, the attorneys for the bank appear to be entitled to 40 percent or 50 percent of the $27,569.20 which was recovered. Under those circumstances it would be unfair to hold counsel to an approximation of fifty hours of work at $50.00 an hour. (Emphasis added)

The Beckstroms should either be bound by the contingency fee agreement or they should not -- and I am sure neither the trial court nor this Court would venture to hold that the contingency fee arrangement, to which the Beckstroms were not a party, should be the basis on which they should pay an attorney fee. I also fail to see how the contingency arrangement can be "an indication" in effect that the Beckstroms should pay more than the normal rate of $50 per hour. To hold otherwise is to hold that the contingency fee agreement is in fact evidence that Beckstroms should be bound in some degree to some standard of assessment of attorney fees without the Beckstroms being a party to that agreement.

Because the Beckstroms were not a party to this agreement, they cannot be held to the contingency fee arrangement as constituting in any way what a reasonable attorney fee would be. The question then becomes what standard should be applied in determining the reasonableness of the fee to be assessed against the

Beckstroms. The only reliable evidence in the record is that of the attorney himself that his normal billable rate is $50 per hour. Any other evidence is based entirely on speculation and on the understandable yet regrettable proclivity of attorneys to justify fees on behalf of their brethren of the bar.

This Court relies on the so-called uncontradicted testimony of plaintiff's counsel and "another attorney who qualified as an expert witness familiar with fees in the area, . . ." in upholding the trial court's finding that the $5,000 fee was "commensurate with those usually charged . . . in this community." (Emphasis added) I fail to see, however, where there is evidence in the record justifying this $5,000 fee.

The Bank's attorney demanded that he be paid $5,000 as the fee, and he and another lawyer testified that $5,000 was a reasonable fee. However, the Bank's lawyer testified that when he charged an hourly rate it was at the rate of $50 per hour. The so-called expert also testified that his rate was $50 per hour. The essence of the testimony of the lawyer receiving the fee is that he should receive a fee higher than the rate of $50 per hour because he had a contingency fee agreement with the Bank which entitled him to a higher fee.

The so-called expert on attorney fees, (and all attorneys seem to be experts in support of attorney fees to be awarded to their brethren of the bar), was that the requested fee, $5,000, was reasonable. But, he really gave no basis for this testimony. In fact, he admitted that he had reviewed neither the District Court file nor the file of the lawyer before determining that the requested fee of $5,000 was reasonable.

Contrary to the assertions of the Bank's counsel, this case was not a complex case. Indeed, judgment against the Beckstroms was virtually assured from the outset -- although whether there would be property to satisfy the judgment was another matter. It does not engender public confidence on the bench and bar for a court to rubberstamp a demand for attorney fees, especially when

that demand is double the usual hourly billing rate of the attorney.

To summarize, a fee twice as high as a fee calculated at the normal billable rate of $50 per hour, is, under the circumstances of this case, excessive. The fee should be $2,500, not $5,000.

Daniel J. Shea
Justice